Thank you, Ted. Let me first mention, if I may, that Bruce Sherrick, who is the author of the amicus brief in this case, is sitting at the table with me. May it please the Court, the Richland decision by this Court, which Your Honor remembers, of course, very well, was cast doubt on one of the long-standing rules in government contracts, namely pass-through claims of subcontractors and others with claims against the government. These claims have to be asserted through the prime contractor, who is the only party in privity with the government. Unfortunately, the Richland decision cast doubt on it, as Your Honor noted from Professor Gnasham's article on the subject, raising the alarm to some significant degree. Can we do anything about that? Isn't the Richland facts so close to this case that it's biting us? No, Your Honor. The facts are quite different. How so? Well, Richland ultimately, as I read the decision, ultimately decided that Richland was merely a conduit for monies that were going to pass through Richland to the employees. You're not also a conduit for the recoveries here? No. They're being paid out through labor, aren't they, and not through your company? No, Your Honor. Have you actually incurred costs that you haven't been reimbursable? Yes, Your Honor. Can I pay them now? A cost is incurred, Your Honor, when the obligation occurs, and Schleicher incurred these costs from the moment that it became liable for the back pay to the employees. But you didn't pay it out. It wasn't paid out to the employees. But you've been reimbursed for all that you've paid out, have you not? By now, yes. Well, then Richland controls it. No, Your Honor. I mean, Schleicher paid a lot of money. He paid over a quarter of a million dollars independently of the amount that's been reimbursed by the government, or that's been paid by the government. Right, but you're talking about interest on money that's to be paid or has been paid by the government, and that money had not been paid out by him. I'm talking, Your Honor, about interest that's owed under the contract dispute system for amounts due, for amounts owed the contractor. That's what I'm talking about, what the statute says. Richland has decided that. There were amounts incurred there also up there, but not paid by Richland, and they were paid through an escrow agent. It's me. Your Honor, it's true. Money was paid by the government to me as an escrow agent or in my escrow account. That is correct, but in Richland it seemed that the court was saying that the costs were not incurred or that it was like the Raytheon case in that the costs involved were not incurred, and thereby apparently confusing. Well, I don't know if they were exactly saying the costs were not incurred, but they were saying, and I think they say in the opinion you concede, someone conceded in oral argument, that they were never out any money. Forget the question of costs incurred, and so I think the answer in this case is the same that you gave or someone gave in Richland, which is no, you were not out any money with respect to the stuff, the monies that you're now seeking interest over. Is that right? Am I right? Your Honor, I don't remember saying that in the Richland case, and it may, you know, it's possible that was a proper inference from something that I had said. I mean, Richland had ten litigations. Well, let me ask you a question. Was the employer or the contractor out any money that, when we're talking about the money that the government is now compensating for that you're seeking interest on? Was the contractor out any money? I'm not sure what out means, Your Honor. The contractor owes money to the employees. It's an obligation. It's a cost incurred. There are very severe consequences for, to a contractor who does not timely pay his employees. He can be debarred. He can be put out of business for three years. He had to, he had to, in total, $400,000 here that was not paid out by the U.S. or not. Correct, Your Honor. And that's what's being sought, but it's being paid now by the Department of Labor. The contractor was entitled to a total of $685,000 by way of an equitable adjustment, which, among other things, did not include anything for overhead. That was decided by this court on the first appeal. It's $685,000 that is the amount owed the contractor for an equitable adjustment. Some of it was paid, and a substantial amount was paid by the contractor. And it was not money that the government paid promptly to the contractor. We have over four years from the time the money was owed to the employees until the contract, the government made the first payment, the Bureau of Prisons, in this case. Which is quite a long period of time. Indeed, under the Contract Disputes Act, the government owes the contractor CDA interest for that period. That interest is owed until the money is paid on the amount due. So you're saying that the government still owes you interest? You got compensated for something over $200,000 for monies you had already paid out, right? Well, it wasn't quite in that way. Yeah, we did get paid part of the payment for amounts due. Are you saying you're owed interest on the money that the government's already paid to you? Absolutely. Is that what this case is about? No. In this case, the board denied interest across the board of any kind on any amount that was due. The contractor was awarded an equitable adjustment for a change. For modification number three, on the basis that a wage determination was put into the contract for the first time a year and a half or so after the contract was awarded. It was a new animal. It changed the contract dramatically. It increased the labor costs by 50% just by that modification that brought in for the first time a wage determination. And those facts are really not disputed, Your Honor. And it was a dramatic impact. And the contractor was awarded finally after litigation an equitable adjustment to the contract price covering the additional costs that they were, that yes, they were out. That they owed the employees and were costs incurred. And were seeking interest on that amount until the time it was paid. Some of it was paid four years after the start of the contract, after it was due, because mod three was retroactive to the beginning of the contract. It made the wage determination retroactive and imposed the liability on the contractor to pay that money from day one. Are you seeking interest both on the amount that was paid to you during the performance of the contract, some $223,000, as well as the some $400,000 that you say is... Well, what I'm actually asking, Your Honor, is for interest, CEA interest on the total amount awarded, which is $685,000, give or take, up to the time it's paid, like it says in the statute. You get interest from the time it's owed until the time it's paid. And four years is a long enough time for that payment. Not all of the $600,000 was four years later, was it? Most of it was longer. The balance was just paid. But what about the $200,000 that you actually paid? You're saying that a portion of that, something over $200,000, you actually paid out to the employees during the term of contract. And taxes, a little over a quarter of a million dollars, Your Honor, yes. And you're saying that money, even though it was reimbursed to you by the government, there was some delay in between the time you paid it out and the time the government reimbursed you? In some, to some degree, no. What is that? Days, hours, years, months? Well, it was years after the time it was due. No, I'm talking about the time you paid it out. We paid the employees at various times, Your Honor. We paid whenever Mr. Fleischer could have the time. You've presumably done the calculations on what you think is OT, the interest OT for that discrete amount of the $200,000. But the amount that we paid to the employees is not what I focused on, because it's the amount awarded that's supposed to draw the CDA interest. But I'm just asking you a question. I mean, I understand your position. I'm just asking you a question. Have you calculated, if you're seeking interest for the delay in the amount that you actually paid out, the $200,000, what's the approximate amount that you're seeking in that regard? I did not focus on that, Your Honor. I'm sorry, I can't give you a specific number. Well, does this page have to be your amendment for a determination of how much interest is due on the $200,000 of wages that were paid during the performance of the contract? No. And then the $400,000 that was paid after completion of the contract? What should be, what we ask the court to do, should be done, is to remand the amount awarded. But up until the time I was emphasizing that you did not lose the value of money for all of that. You did not lose the use of money, which is what interest is for, to compensate you for the loss of your use of money for a certain period of time. You didn't lose the entire amount over the period before it was refunded. How much did you lose actual payout and lose the use of for a period of time? And that is the $200,000 amount. That's the one that the court's focusing on. I understand, Your Honor. The answer is that... You'd like a bigger amount. No, no, I don't have an answer to it, because the CDA entry is supposed to go on the amount awarded. That's what we're seeking. Until it's paid. But if you didn't lose the use of the entire amount awarded, then why would you deserve interest on that? Because the law says so, Your Honor. Well, evidently the law does not say so under Richland. Under Richland, the law says something a little different. I appreciate that, Your Honor, and I appreciate the position. It seems to me that for 28 years, we had a very simple rule, and it was a straightforward rule, and everybody recognized it in the government contracts community. But this could be just as simple a rule, couldn't it? You get the interest on the amount that you have actually lost the use of. But I don't think that's the rule, Your Honor. Again, Your Honor, make the call. If we apply Richland, as I think we have to as a panel, is there any amount of money that you've paid out and you had a delay in receiving reimbursement? That's what I'm trying to get at. If some part of the $223,000 that was paid during the contract was paid late, then even under Richland, you would be entitled to get some interest on that. I understand, Your Honor, and the answer is yes. If you don't tell me yes or no, all I have before me then is the Richland case. Your Honor, the amount that was paid out over the life of the contract was not reimbursed promptly by the government and was paid late, should have been paid much earlier, wasn't. And you claim interest on that? Yes, Your Honor, on all of them. And we don't know what period. Your Honor, it was paid late by four years into the contract after creating a lot of difficulty for the contractor during that period. And did you make this claim? I mean, the Board revisited this, as you well know, this issue of interest after Richland and after Raytheon. Did you make that argument to the Board? Like, even under Richland or even under Raytheon, we still would be entitled to this amount? No, I didn't, Your Honor. We did not because we believe that Raytheon was clearly distinguishable on its facts. Raytheon involved a case in which there were phantom costs. But who saw that? Do you think you've waived your argument? An argument or whatever to make to come in here and have us say, well, there's still something left here? Did you make this argument? I don't think we've waived the argument, Your Honor. I think we are claiming CBA interest in accordance with the statute, in accordance with what's appropriate in this circumstance. Thank you, Mr. Ginsburg. Thank you. Mr. Schultes, we're going to restore three minutes of rebuttal time to Mr. Ginsburg. Could you give Mr. Schultes an additional three minutes, should he need to use it? Thank you, Your Honor. May it please the Court. The Board was free to reconsider the interest issue on its own motion, and that decision should be affirmed because it follows this Court's decision in Richland. The Board was free to reconsider the interest issue because this Court, in the prior appeal, did not consider the interest issue. Right. And it wasn't appealed, and that's obviously because the other side won it. So there was the government should have arguably appealed it, based on the position here, and did not. Right? That's correct, Your Honor. And that probably would be an argument against us if you were arguing that we had waived the right. But we're talking about the Board, on its own motion, revisiting the interest issue. But is it not a bit troubling, or ought it not to be a bit troubling, that at least with respect to the process, the other side has had to appear here twice? And as you even acknowledged, and I appreciate that in your brief, but before you came up here the first time, Raytheon had been decided. And so you all had the opportunity. I mean, if you had decided at that point, based on Raytheon, we're going to come up here to the Court of Appeals and say you want not to pay interest, then we would have been left with one single proceeding as opposed to this double fine here. Do you acknowledge that? Well, I understand what you're saying, Your Honor. And it might be somewhat troubling, but it certainly wasn't troubling to the Board. And after all, the whole point of that decision, of the Board's existence, is to get it right on the law. You're right. Raytheon was issued after the Board's June 19, 2002 decision, but before we were on appeal here the first time. And so arguably we could have brought that issue to this Court's attention. But remember, the interest issue was, even though it was clear that Schleicher was going to get CDA interest under the Board's 2002 decision, the amount that that was going to – how much that was going to be was still a question that we didn't have determined. So that's your argument that it wasn't final? It was final. What saved you to the question that Judge Archer pursued for the other side on this $200,000 that I think the government – no, just the government agrees that it paid out somewhat. I think the government says $260,000 during the period. Was that amount laid? If so, why would interest not be due on that amount? Your Honor, as far as I know, that amount was not laid. This is the first I heard that that was at all tardy or that there was any interest accruing to that. But there's really no mystery as to what those amounts were. In fact, one of the things we did at the Board level was to deal with what the award ultimately would be. And on page 39 of the joint appendix, the Board lays that out very nicely. So we can see how much the increased wages were, how much the prisons pay under the contract. That arithmetic is very clear. And so where does that get us on this amount of $200,000? Well, I don't think there is any interest accruing to that $262,000. $262,000 was something that we talked about a lot because we knew it had to be taken into account. And I am not aware that there is any interest claim on that at all. But just weren't they claiming interest on the $200,000 was in this larger amount of $600-something thousand, and they were claiming interest on the $600,000? I mean, wasn't the amount they were claiming interest on just that large amount included the $200,000? As far as I always understood the $262,000, we simply wanted to get credit for what we had already paid. And I always understood the interest claim that was being asserted had to do with the $415,000 that was remaining. I never understood that it would- And they weren't ever done with that issue, correct? It didn't. And if you look at that page of the joint appendix, it's not exactly like the issue of interest had not occurred to the board. In fact, in the second-to-last sentence in that paragraph, page 39 of the joint appendix, Schlager did receive CDA interest on the $13,000 in other costs and profit that it was awarded. So you think if some money was due, then it would have been recognized? We certainly would have discussed it. As we argued in our brief, Richland controls here. Schlager is seeking interest on monies that it has not paid, it will never pay. If anything, this case is even stronger than the Richland case because the money has been transferred to the Department of Labor, and those monies are being paid by the Department of Labor to the degree we can find these employees. In Richland, at least Richland was a conduit. Here, Schlager will never see that money. And for that reason- And the employees have no entitlement to an interest payment? I mean, it's the employees, in your view, and I can understand that, the employees who have been deprived of the use of the money that was owed to them by the government or by the contractor for that protracted period of time. I understand- That's the disturbing thing about Richland, I think, is the employees don't get any benefit out of it. They're the ones who've been deprived, and there's no way in which they have no privacy in which they can even try to get reimbursement for that delay. I understand what you're saying, Your Honor, and frankly, I agree. However, as this Court ruled in Richland, the way it was a sovereign unity, including the paying of interest, that would be strictly construed. I'm not aware of any authority that would allow us to pay the employees. So you're telling us to tell it to Congress? More or less, Your Honor. I wish I had a more satisfying answer for that, but I don't. I also just wanted to briefly address the pass-through issue, because, again, I don't see how Schleicher's arguments regarding Richland underlining pass-through claims really has any bearing on this. We're not arguing here that Schleicher cannot assert a claim for service contract-backed wages. In fact, that's what the whole—that's what its claims before the Board were all about. And as we were just discussing, they have been compensated for that. What we're really talking about here is whether they can get interest for monies on wages that the contractor won't ever have to pay. And we think that Richland is very clear on that issue. Well, now, it's clear that only the contractor can assert a claim for wages. And they were—and the wages were incurred by the contractor. That's right. That's right. We're not arguing that there was no claim here. We're not arguing that, frankly, we're doing everything we can to pay the employees. That's not—that was never the issue. But what I think that Schleicher's trying to argue here is this undermines pass-through claims. Now, what if—what if Schleicher had objected to the way in which this was done to transfer the—in effect, the obligation over to the Department of Labor and be successful? So the funds were actually paid to Schleicher. Well, I don't think that that would make a difference because, as in the Richland case, they're being paid through an escrow account, and the court— No, it wouldn't be an escrow account. It would be directly to— If it's simply acting as a conduit, and they're not out of it, that's what the Contract Disputes Act requires. There are a lot of situations in which the prime contractor acts as a conduit or really a claim, and it's solely for the benefit of the prime contractor. I'm not sure—I'm not entirely sure what you're asking there, but, again, we're not arguing here that Schleicher couldn't have brought a claim. And that to me is the point. So, unless there are any other questions, we simply request that the Board's decision be loaded for Mr. Schultz. Mr. Ginsburg, you need to be restored in three minutes. It's about time. Thank you, Your Honor. So, if you have some questions beyond that. Thank you, Your Honor. With regard to the employee potential claims and so on, the idea of an employee being able to bring claims, I remember, Judge Rader, that you had asked me the question in the Richland case as to whether I was there seeking interest for the employees in that situation of amounts that were owed the employees. And I wasn't expecting the question, but I did indicate that of necessity that I was there representing the contractor and seeking those funds. The fact is that if this Court had awarded the CDA interest to the contractor, Richland Security Service Company, namely Linda Santos, who was the individual who conducted these cases and sought to get the money for the employees and so on, she would have shared it to some degree with the employees. Once this Court denied the interest to the contractor, there was nothing to share. And there was nothing for the employees. The same would be true in Schleicher. Mr. Schleicher has shown similar conduct vis-à-vis his employees. When his employees, when they had quite a delay in payment and collecting from the government and so on, he wrote to his employees and he assured them. What does it mean to share to some degree? It means giving it to somebody. It's out of the money completely. It's not your money, it's theirs. What? Isn't it them that has lost the use of the money as wages? Isn't this wages? Yes. So it's them that has lost the higher weight, the use of that money for a period of time. I'm sure that's true, Your Honor. In the Richland case, for example, the employees had no claim to speak of. It was all barred by statute of limitations until Ms. Santos reinstated it and reached an agreement with the Department of Labor, but it was the employees' wages. Therefore, the employees are the ones who lost the use of the money. Am I correct? We're not talking about claims now. We're talking about who lost use of the money. I'm not talking about statute of limitations or who has privity. I'm talking about who lost the money. It's Your Honor's perception that we'll obviously have control. But the answer is that a contractor has a lot of responsibilities and a lot of obligations in a lot of situations, and that's why we have a CDA interest statute, which was not questioned for 28 years. And it's demonstrated by the briefs of Mr. Schultes, who's a fine lawyer, and Judge Fennessy's opinion in Richland 1 that assumed... I'm sorry, in Schleicher 1, that assumed the CDA interest would automatically be applied, and that's the way it was. And this court now has assumed an obligation, it's a pretty serious one, to define the limits and the individual impacts and so on when we have a very, very simple rule. And the problems and the liabilities accruing to this court I think are problems. The court doesn't need it in terms of that. But that's the nature of, I think, what happens when we attempt to refine and distinguish the Richland situation. Thank you very much. All rise. The Honorable Court is adjourned from day to day. Thank you. Thank you. Thank you. Thank you for the support. Thank you for the briefs. I was encouraged by the statements of Judge Urchin, right? Did you get that?  No, we understood that it was the employees that were bearing the burden here, and that it was only the prime contractor that was triggering it. Right. Now, what you have to do is, and hopefully we'll understand, that justice and what Congress meant in the CDA was that the prime contractor collects interest and then may or may not have to pay that over to the employees. That's what I'm talking about. You see, you need to put it that way. You put it that way, and you're not going to be, you know, it's not, you're not going to be reciting that argument. I mean, they, you know, because it's, because it's...